539 P.2d 288

**TEXACO, INC., Plaintiff-Respondent and Cross-Appellant,**

v.

**Richard C. JOHNSON, Defendant-Appellant and Cross-Respondent.**

No. 11707.

Supreme Court of Idaho.

Aug. 8, 1975.

Don G. Brooks, Moffatt, Thomas, Barrett & Blanton, Boise, for plaintiff-respondent and cross-appellant.

Lloyd J. Walker, Twin Falls, for defendant-appellant, and cross-respondent.

McQUADE, Chief Justice.

Texaco, Inc., plaintiff, respondent and cross-appellant, (hereinafter Texaco) entered into a distributor agreement and a consignment agreement with Richard C. Johnson, defendant, appellant and cross-respondent (hereinafter Johnson) on November 15, 1967. Both agreements were to continue in force until terminated by either party upon giving five days written notice. Pursuant to the agreements Texaco placed Johnson in possession of its Twin Falls bulk plant who then became a bulk plant operator in that area for the purpose of selling and distributing Texaco's automotive products. The bulk plant consisted of a warehouse building with office facilities and room for storage of automotive products and supplies, metal storage tanks to contain gasoline and oil, pumps, loading platform and rack, driveways and other necessary equipment for its operation.

On November 16, 1970, Texaco exercising its contractual option to terminate, gave Johnson written notice of termination of both contracts, to be effective as of December 1, 1970. Johnson admitted receiving this notice but refused to vacate the premises. On or about December 10, 1970, counsel for Texaco served a 30-day notice of termination and demand for possession of the premises on Johnson, (who also admitted receiving this notice), effective January 15, 1971. When the January 15th deadline arrived, Johnson again refused to turn over possession of the bulk plant to Texaco. Texaco then filed this unlawful detainer action for immediate return of the premises and for damages, reserving the right to amend the complaint so as to specify the amount of damages incurred by it in the future. A short time after this action was commenced, Texaco leased land in Twin Falls from a realtor for the purpose of constructing a temporary bulk plant. The trial court found that Texaco expended $8,309.11 for the rental of the land and the costs of land leveling, storage bins, racks, lines, labor and other incidentals in preparing this temporary bulk plant for use.

Johnson filed an answer to the complaint in April of 1971, denying that his possession of the bulk plant was unlawful. He also counterclaimed for damages alleging that Texaco's actions in terminating the agreements interfered with his right to freely sell his business. Texaco in a reply to the counterclaim denied these charges. Texaco moved for partial summary judgment alleging that it was entitled to judgment on its complaint as a matter of law except as to the amount of damages. It also moved for summary judgment in its favor as to Johnson's counterclaim. Johnson then made a motion pursuant to I.R.C. P. 42(b) for a separate trial of his counterclaim on the grounds and for the reason of avoiding prejudice to his counterclaim.

The trial court entered an order initially granting Texaco's motion for partial summary judgment as to its complaint, denying Texaco's motion for summary judgment as to the counterclaim, and denying Johnson's motion for a separate trial of his counterclaim. Upon reconsideration the trial court vacated its previous order and entered an amended order whereupon it af-

firmed its previous granting of Texaco's motion for partial summary judgment on its complaint, ruling that as a matter of law Texaco had the right to possession of the bulk plant and that on and after January 15, 1971, Johnson unlawfully detained the premises; but this time it dismissed Johnson's counterclaim, ruling that the counterclaim failed to state a claim upon which relief could be granted because as a matter of law a counterclaim will not lie to an action in unlawful detainer; and having dismissed the counterclaim, found it unnecessary to formally rule on the motion for a separate trial. The sole issue left for trial was the question of damages if any to be recovered by Texaco as a result of the unlawful detainer.

Upon waiver of a jury trial by both sides, the proceedings were heard by the trial court sitting without a jury. The trial court concluded that Johnson had unlawfully detained Texaco's property from January 15, 1971 to June 22, 1971 after having received valid demand for possession, and that the proper measure of damages was the reasonable rental value of the property for the period that it was unlawfully detained. It therefore entered judgment awarding Texaco $635 per month for 5.23 months, amounting to $3,321.05 plus costs. It rejected Texaco's claim for treble damages, finding that Johnson's unlawful detention of the premises was done upon advice of counsel, and was not such a wanton or malicious action as to warrant a punitive award. It denied as well Texaco's claim for reimbursement of the expenses it incurred in constructing the temporary bulk plant, ruling that this cost was not the natural and proximate result of Johnson's unlawful detainer and thus was not a proper measure of damages. The trial court also found Johnson's counterclaim to be improper. Johnson appeals from the judgment entered awarding Texaco damages and court costs and from the amended or-

der which was entered granting Texaco's motion for partial summary judgment and dismissing its counterclaim. Texaco cross appeals from the judgment entered. We affirm.

We will first address ourselves to the three assignments of error raised by Johnson and then direct our attention to the one assignment of error set forth by Texaco.

■ In his first assignment of error Johnson contends that the trial court erred in dismissing his counterclaim instead of severing it for trial as he had requested pursuant to I.R.C.P. 42(b). Johnson submits that at the time his counterclaim was filed there was some confusion in this area in view of I.C. § 6–320 (Rules of Practice in Unlawful Detainer) and I.R.C.P. 13(a) (compulsory counterclaims) and 13(b) (permissive counterclaims). He argues that it was not until *Willmore v. Christensen*,[1] decided two months after he asserted his counterclaim, that this Court clarified the confusion by indicating that unlawful detainer actions were "special proceedings" under Rule 81(a) not governed by the I.R.C.P. to the extent of any conflict. Thus it is his position that he was without the benefit of the *Willmore* decision at the time he asserted his counterclaim, and in light of this, the granting of Texaco's motion for summary judgment on his counterclaim was prejudicial. There is no merit to this contention.

The record discloses that Johnson filed his counterclaim on April 13, 1971. Prior to that time the law was clear and settled that a counter or cross-claim was improper in an action for unlawful detainer, and that should such a claim be presented, it would be dismissed.[2] The *Willmore* decision released on June 25, 1971, did not depart from this rule nor establish new law in this regard, but rather reaffirmed this well established principle. Thus, we fail to

---

1. 94 Idaho 262, 486 P.2d 273 (1971).

2. *See Hunter v. Porter*, 10 Idaho 72, 77 P. 434 (1904); *Fry v. Weyen*, 58 Idaho 181, 70 P.2d 359 (1937).

see how Johnson was prejudiced by its release a short time after his counterclaim was asserted. The trial court's action in dismissing his counterclaim was in conformity with an unbroken line of precedent established well before *Willmore* was released, and therefore was in all respects proper. Having properly dismissed the counterclaim, it would have been a futile and unnecessary gesture to then pass upon Johnson's motion for a separate trial on the counterclaim.

It might be noted in passing that Johnson cannot now be heard to complain about any uncertainty in the law at the time his motion for separate trial was entertained. Johnson made this motion [pursuant to I. R.C.P. 42(b)] in May of 1974. This was almost three years after the court in *Willmore* in passing upon the applicability of I.R.C.P. to unlawful detainer actions noted:

> "We note further that Rule 81(a) provides that the I.R.C.P. do not govern practice and procedure in any special statutory proceedings insofar as they are inconsistent or in · conflict therewith. Although Rule 81(a) fails to itemize the "special statutory proceedings," we conclude that said phrase was intended to include actions in unlawful detainer." [3]

In his second assignment of error Johnson contends that an unlawful detainer action was an inappropriate proceeding for Texaco to pursue under the circumstances. He maintains that unlawful detainer actions are provided solely for determining issues as to possession where a landlord-tenant relationship exists, and he denies that such was the nature of his relationship with Texaco. Furthermore he submits that even if such a relationship is found to exist, that where as in this case, the issue of possession is interrelated with complex issues concerning the commercial relationship of the parties, an unlawful detainer action should not be entertained. Thus it is his position that for this conflict to be adequately resolved, an inquiry ranging far afield from the issue of simple possession should have been conducted, and that the granting of partial summary judgment in Texaco's favor was in error. We find this argument to be without merit.

An unlawful detainer proceeding was appropriate under the facts of this case. In commencing this action, Texaco was seeking to regain possession of its property after Johnson refused to vacate at the expiration of the term for which the bulk plant was placed in his possession. Unlawful detainer statutes were enacted for the purpose of providing a landlord or lessor with the benefit of a special summary process whereby he could regain possession of real property from a tenant or lessee who was unlawfully holding over and therefore was no longer in rightful possession.[4] The sole issue before a court in such a proceeding (after determining that a landlord-tenant relationship exists) is the question of who has the right to possession. No other extraneous issues are to be injected by either party[5] to cloud the proceedings for to allow either party to interpose questions unrelated to the issue of possession would frustrate the purpose and objective of the unlawful detainer provisions.

Johnson admitted in his answer to Texaco's complaint that the relationship of landlord and tenant existed between the

---

3. *Willmore v. Christensen, supra*, n. 1 at 264, 486 P.2d at 275. In October 1974, the Idaho Supreme Court promulgated an order whereupon the I.R.C.P. were amended and all other civil rules were rescinded effective January 1, 1975. Under Rule 1(a) of the amended rules, the I.R.C.P. now apply to all civil and special statutory proceedings.

4. *See* 3 A Thompson on Real Property § 1370 at 718 (1959).

5. *See Richardson v. King*, 51 Idaho 762, 10 P.2d 323 (1932).

two parties. In paragraph II of his complaint, Texaco alleged:

II

Plaintiff (Texaco) is the owner in fee of the premises hereinafter described and is the landlord of defendant (Johnson) with respect to said premises.

In his answer Johnson stated:

I

Defendant admits the allegations contained in paragraphs I and II of plaintiff's complaint.

This admission is binding upon him. I.R. C.P. 8(d) provides in pertinent part:

"Rule 8(d). Effect of failure to deny. —Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading, except those necessary to sustain an action for divorce."

 As to the right of possession, the record discloses the following facts:

(1) Under the terms of both the consignment and distributor agreements either party had the unfettered right to terminate the agreements by giving five days notice in writing.

(2) Johnson was aware of this termination right.

(3) Texaco exercised this right, but Johnson refused to accede to Texaco's demand to vacate its bulk plant after receiving repeated notices to do so.

(4) Johnson continued to remain in possession from January 15, 1971 to June 22, 1971, despite Texaco's requests to vacate.

Where there are no genuine issues as to any material fact, and where the moving party is entitled to judgment as a matter of law, summary judgment is proper.[6] We have reviewed the record and conclude that the trial court's order granting partial summary judgment in Texaco's favor whereupon it adjudged Texaco to be entitled to possession of the premises described in its complaint, and adjudged Johnson to have unlawfully detained the premises on and after January 15, 1971, was in all respects proper.

In his third and final assignment of error, Johnson contends that the trial court erred in treating the relationship of the parties as a simple tenancy at will, and in therefore finding that the notice to vacate sent to him on December 10, 1970 (whereupon Texaco informed him that the tenancy with respect to the premises would terminate as of January 15, 1971) was adequate. Johnson maintains that the tenancy before the court was not a mere permissive occupancy of the premises as is the case in a true tenancy at will. Rather he submits that the tenancy was interrelated with a business relationship between the parties approaching that of a joint venture which necessitated an analysis beyond that of strict landlord tenant law. Therefore it is his position that the court should not have applied I.C. § 55–208 [7] which establishes a period of notice "not less than one month" before a landlord can terminate a tenancy at will, but that instead the court should have determined what notice was reasonably necessary for the orderly dissolution of the business relationship. As the issue of reasonableness of notice was material to Texaco's unlawful detainer action, Johnson argues that the granting of summary judgment in favor of Texaco was erroneous. We cannot agree with this argument.

 It is clear from the record that the notice sent by Texaco on November 16, 1970, whereby it informed Johnson of its

---

6. *See Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 516 P.2d 1168 (1973).

7. I.C. § 55–208 provides: *"Termination of tenancy at will.*—A tenancy or other estate at will, however created, may be terminated by the landlord's giving notice in writing to the tenant, in the manner prescribed by the Code of Civil Procedure, to remove from the premises within a period of not less than one month, to be specified in the notice."

desire to terminate both the distributor and consignment agreements effective December 1, 1970, did not afford him the one month notice to vacate the bulk plant as is required under I.C. § 55–208. However, on or about December 10, 1970, Texaco served written notice on Johnson to vacate as of January 15, 1971, which was a date more than one month following the service of the notice. This notice did comply with the requirements set forth in I.C. § 55–208. We conclude that there was no genuine issue as to the sufficiency of the notice given to terminate and that therefore the granting of partial summary judgment in Texaco's behalf was proper.

In its sole assignment of error Texaco contends that the trial court erred in entering its fourth conclusion of law, which reads as follows:

> "4. Plaintiff's [Texaco's] expenses in constructing its temporary bulk plant were not the natural and proximate result of defendant's [Johnson's] unlawful detainer and are not a proper measure of damages."

Texaco maintains that the expenses it incurred in establishing a temporary bulk plant were necessitated by the actions taken by Johnson in denying it access to its Twin Falls permanent bulk plant. It argues that it was forced to construct a temporary facility or be faced with the possibility of losing all of its customers in the Twin Falls geographic area. Therefore it is Texaco's position that its expenditures in this endeavor were the natural and proximate result of Johnson's unlawful detainer, and in accordance with I.C. § 6–316 [8] were a proper measure of damages. We do not agree with this argument.

I.C. § 6–316 allows a landlord in an unlawful detainer action to recover, in addition to possession of his property, damages and rent found due. The landlord who seeks to recover damages from the holdover tenant, has the burden of proving that the claimed damages are the proximate or direct result of the unlawful detention.[9] The trial court concluded that the damages sought by Texaco did not naturally flow from the action of Johnson in wrongfully remaining in possession of the permanent bulk plant. The record supports this conclusion.

Judgment affirmed.

Costs to respondent.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

8. I.C. § 6–316 as then applicable provided in pertinent part: *"Judgment—Treble damages—Restitution.*—If, upon the trial, the verdict of the jury, or, if the case be tried without a jury, the finding of the court, be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding be for an unlawful detainer after neglect or failure to perform the conditions or covenants of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement. The jury, or the court, if the proceeding be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent, and the judgment shall be rendered against the defendant guilty of the forcible entry, or forcible or unlawful detainer, for three times the amount of the damages thus assessed, and of the rent found due."

9. See 32 A.L.R.2d 582 for an excellent annotation on the measure of damages for a tenant's failure to surrender possession of rented premises.